## Case No. 11,251.

### POLK v. WINDEL et al.

[Brunner, Col. Cas. 168; [1] 2 Overt. 433.]

Circuit Court, D. Tennessee. June, 1817.[2]

GRANT—EFFECT OF NORTH CAROLINA ACT—FORGERY OF LAND WARRANT—PROOF—ENTRY UNDER GRANT—ADMISSIBILITY OF PAROL EVIDENCE TO DENY — PRODUCTION OF EVIDENCE — GENERAL RULE.

1. North Carolina had no power after the cession act to issue grants for land in territory ceded thereby, unless some incipient right previously existed. It is therefore competent to inquire whether there was an entry previous to the cession, or whether the warrant was a forgery.

2. Such evidence as would be competent on a scire facias by the state to repeal a grant, or in equity, is receivable to prove forgery of a land warrant.

3. Parol evidence of the contents of entry taker's books, which were lost, is inadmissible where abstracts of these books were made, and are in existence.

4. The best evidence of which the nature of a thing is capable must be given, and no evidence will be received, when better evidence is in the party's possession or power.

On the trial of this cause the plaintiff's counsel offered in evidence forty copies of warrants having the same numbers with those referred to in the grant to Sevier for twenty-five thousand acres, certified by the secretary of North Carolina to be the same warrants on which Sevier's grant issued. And also certified copies of other warrants of the same numbers, previously issued, some for the same, some for other quantities, upon which grants issued to other persons, and previously to the date of Sevier's grant.

This evidence was offered for the purpose of showing that Sevier's grant had no legal foundation; not that it would directly prove it, but furnish facts from which the jury might draw such an inference, or that there never were any entries, and that the warrants were forgeries.

---

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

[2] [Reversed in 9 Cranch (13 U. S.) 87.]

This evidence was objected to on the ground that it was not the best of which the nature of the case is susceptible; that as it was admitted on the other side that the entry taker's books of Washington county, whilst a part of North Carolina, were lost, or no longer in existence, the next best evidence was the production of the warrants which had been lodged in the secretary's office of North Carolina. If they could not be had, the next best evidence would be the inspection of those warrants in the secretary's office by some respectable man acquainted with the writing of the entry taker Carter. If the first could not be had, the latter might, and no reason is given why either is not produced. And because no pertinent inference could be drawn from the evidence proposed, if received, it would tend only to mislead and inveigle the jury, and put to hazard the landed interest of the country, which ought to rest on certain, known, and fixed principles. The practice or manner in which the entry taker's office of Washington county was kept or conducted is well known. The court will take notice of that practice; and to show that practice, a certificate annexed to an abstract from the clerk of the board of commissioners of land claims for East Tennessee was referred to, from which it appeared that it had been the practice of the Washington entry taker's office to make a great many entries from the opening to the closing of the office, of the same numbers, and that nothing can be collected from that source in relation to the genuineness of the warrants on which Sevier's grant issued.

Before TODD, Circuit Justice, and M'-NAIRY, District Judge.

TODD, Circuit Justice. The supreme court of the United States has determined that the state of North Carolina had no power, after the cession, to issue grants for lands within the ceded territory, unless where some incipient right previously existed. In this cause, then, it would be competent to inquire whether there was an entry previous to the cession, or whether the warrant was a forgery. But this must be ascertained by legal evidence; what would be competent evidence on a scire facias by the state to repeal a grant, or in equity, might be receivable here. But the evidence offered, in my opinion, is neither relevant or competent. Suppose this was an indictment for the alleged forgery. The original books, if under the control of the court, ought to be produced. They might be produced on a subpœna duces tecum to the secretary. It is true, as has been argued, that every forgery includes a fraud, but it is not true e converso. There are but a few excepted cases in which we can go beyond the grant for the purpose of avoiding it. And where forgery is recognized as one, it is that offense, technically speaking. To infer it from the fact that different warrants were to be found in the secretary's office of the same number would be dangerous in the extreme; that he would not permit the jury to infer it, and considering the practice of making entries in Carter's or Washington county entry taker's office, no such inference could be drawn from the copies proposed, if received.

M'NAIRY, District Judge. I concur with Judge TODD in the rejection of this evidence. I do not think it relevant. It might be different if evidence were first introduced to show that the warrants were not in the handwriting of the entry taker; irreparable injury might result to society if the principle were once established, that because two warrants were of the same number, the inference might be drawn that one of them was therefore a forgery.

The plaintiff's counsel then offered to read in evidence a certified copy of part of a paper, abstract, or book referred to in the twelfth section of the act of 1807, c. 2, so far as respects the numbers of warrants on which Sevier's grant issued. The abstract (that being the most proper appellation of such a paper) is stated in that section as a book procured from the office of the secretary of state of the United States. It was alleged that agreeably to that abstract there was but one entry for each of those numbers, and if admitted would show by other evidence that Sevier's grant could not have issued on the entries referred to in that paper. But the court rejected the evidence because the copy produced was only of a part of that abstract.

Parol proof was then offered to show circumstances respecting the loss of the entry books of Washington county about the year 1800, and also to establish the proposition that no such entries as those referred to in Sevier's grant ever were on those books. Several other attempts were made to produce parol proof to various points as stated, all of which evidence was offered with a view to annul or destroy the validity of Sevier's grant.

TODD, Circuit Justice. The question now presented to the view of the court is, whether parol evidence shall be received to prove that there were no such entries in the entry taker's books as those by virtue of which the warrants in question purport to have been issued. The original books are admitted to be lost. It appears, as well from the law as the evidence offered which has been rejected, that an abstract of these books was taken. The extract of that abstract has been rejected because it was not a complete copy. The object is to prove that no such entries ever existed on the books. How can this appear when neither the books nor a complete copy of them are produced? There is better evidence of the fact attempted to be proved. The abstract is certainly better evidence, and therefore parol testimony must be rejected.

M'NAIRY, District Judge. An attempt is now made to prove by parol evidence that certain entries which are presumed to exist

never had an existence. This, in my opinion, cannot be done. If, by the ravages of war, fire, or other casualty, the entry books, which are considered as public records, should be destroyed, and parol evidence could be received to show either the contents of the entries or that none such ever existed, with a view of destroying the validity of a state grant or patent, what would be the situation of society? Whose rights would be safe? The precedent would be of most dangerous tendency, and ought not to be established. This evidence must be rejected.

The jury found a verdict for the defendant. In the course of the trial the counsel for the plaintiff filed a bill of exceptions to the opinion of the court, with a view, as stated, of carrying up the cause by writ of error to the supreme court of the United States.

NOTE. This case and the one preceding it went to the United States supreme court on a writ of error, and the above decision as to admissibility of duplicate warrants and of entry taker's books to prove forgery, reversed. See Polk's Lessee v. Wendal, 9 Cranch [13 U. S.] 87; [Cohens v. Virginia] 5 Wheat. [18 U. S.] 303.